UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| STEVEN MICHAEL COX, | ) | 3:05-CV-00421-HDM (RAM) |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| E.K. MCDANIEL, et al., | ) | |
| Defendants. | ) | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment (Doc. #72). Plaintiff opposed the motion (Doc. #77) and Defendants replied (Doc. #66).

The court has thoroughly reviewed the pleadings and the record and recommends that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the Nevada Department of Corrections (NDOC) (Doc. #2). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to due process (*Id.*).

First, Plaintiff alleges Defendants violated his Eighth Amendment rights by denying him extra blankets during the cold months when his cell temperature reaches extremely cold temperatures (Doc. #77 at 2). Plaintiff asserts Defendants failure to provide him with extra

blankets has caused him to suffer "severe deteriorative health." (Doc. #77 at 2). Next, Plaintiff alleges Defendants violated his Eighth Amendment rights by serving him a nutritionally inadequate meat alternative / vegetarian diet (*Id.*). Plaintiff asserts Defendants denial of an adequate diet has caused him "weight losses, starvations, and deteriorative health conditions." (*Id.* at 3). Finally, Plaintiff alleges Defendants violated his Fourteenth Amendment rights by denying him a due process hearing with regards to his meat alternative / vegetarian diet (*Id.* at 14).

After screening, Plaintiff's First Amended Complaint includes the following remaining causes of action: 1) Count IX - violation of Plaintiff's Eighth Amendment right against cruel and unusual punishment; 2) Count X - violation of Plaintiff's Eighth Amendment right against cruel and unusual punishment; and 3) Count X - violation of Plaintiff's Fourteenth Amendment right to due process (Doc. #2). Plaintiff requests money damages, pre-judgment fees, post-judgment fees, out-of-pocket expenses, court costs and reasonable attorney's fees with interest (*Id.*). Plaintiff asserts his claims include compensatory, declaratory and punitive damages (*Id.*).

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

1         The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

        In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

### III. DISCUSSION

        Defendants assert summary judgment should be granted as to all Defendants sued in their official capacities because they are not "persons" capable of being sued under § 1983 (Doc. #72 at 3). Defendants further assert summery judgment should be granted on Plaintiff's Eighth Amendment claim regarding his vegetarian meals because Plaintiff is served a nutritionally adequate diet and receiving vegetarian meals is simply Plaintiff's preference, rather than a medical necessity (*Id*. at 4-5). Defendants also assert summary judgment should

be granted on Plaintiff's Eighth Amendment claim regarding the temperature in Plaintiff's cell because Plaintiff is provided with two (2) blankets pursuant to Administrative Regulation 711 and Defendants ensured maintenance regulated the temperature in Plaintiff's cell to stay between 72-74 degrees (Doc. #72 at 6). Furthermore, Defendants assert they have denied Plaintiff's requests for extra blankets for safety reasons, as Plaintiff previously attempted suicide by tying two (2) sheets together (*Id.*). Finally, Defendants assert summary judgment should be granted on Plaintiff's Fourteenth Amendment Due Process claim because Plaintiff has no liberty interest in vegetarian meals (*Id.* at 7).

Plaintiff argues Defendants have acted with deliberate indifference to his serious medical needs and his health and safety by denying him extra blankets in extreme cold temperatures and by serving him nutritionally inadequate vegetarian meals (Doc. #77). Plaintiff further argues Defendants violated his Due Process rights by denying Plaintiff a hearing regarding his vegetarian meals, in order for Plaintiff to establish a liberty interest in said meals (*Id.*).

Defendants respond that Plaintiff has presented no genuine issues of material fact to support either an Eighth Amendment or Fourteenth Amendment claim, as Plaintiff has no medical order for vegetarian meals, Defendants checked several times to ensure the adequacy of Plaintiff's cell temperature, and Plaintiff has no liberty interest in vegetarian meals (Doc. #80).

A.   **OFFICIAL CAPACITY IMMUNITY**

Section 1983 imposes a duty on persons acting under color of state law not to deprive another person "of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1988). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989). "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief

4

are not treated as actions against the State." *Will*, 491 U.S. at 71, n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).

Defendants assert they are immune from suit in their official capacities because they are not persons who can be sued under § 1983 (Doc. #72 at 3). Plaintiff did not address this argument.

Plaintiff's First Amended Complaint specifically states Defendants are being sued in their official capacities "for mental, physical, emotional damages per … Count IX: $77,000 … [and] Count X: $77,000 …" (Doc. #2 at 186-187). Plaintiff's complaint further states Counts IX and X (the only remaining claims) include compensatory, declaratory and punitive damages (*Id.* at 187). Thus, Plaintiff is suing Defendants in their official capacities for money damages and not for prospective relief. Accordingly, Defendants' request that the court find them immune from suit in their official capacities should be **GRANTED**.

**B.    EIGHTH AMENDMENT**

Under the Eighth Amendment, where inmates challenge prison conditions, the Supreme Court has applied a "deliberate indifference" standard. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle*, 429 U.S. at 104-105. Deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983. *Id.* at 105.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). A showing of medical malpractice or negligence is insufficient to establish a violation under the Eighth Amendment. *Id.* Instead, Plaintiff must meet two requirements in order to show Defendants acted deliberately indifferent to his serious medical needs. First, Plaintiff must show, as an objective matter, that Defendants' actions rise to the level of a

5

"sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also, Rhodes v. Chapman*, 452 U.S. 337, 345-346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, as a subjective matter, Plaintiff must show Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, Plaintiff must show Defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it either by their actions or inactions. *Id.* at 837. Plaintiff need not show Defendants acted or failed to act believing that harm actually would befall him; it is enough that Defendants acted or failed to act despite having knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842.

"Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (citing *LaFaut v. Smith*, 834 F.2d 389, 391-392 (1987)).

### 1. **Vegetarian Meals**

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.* (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1983), *cert. denied*, 475 U.S. 1096 (1986)). As previously discussed, "[i]n order to state a cognizable [Eighth Amendment] claim, a prisoner must allege acts or admissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. That indifference must be substantial; inadequate treatment due to negligence or inadvertence, or differences in judgment between an inmate and medical personnel do not constitute cruel and unusual punishment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981).

Plaintiff asserts Defendants violated his Eighth Amendment right by serving an inadequate meat alternative diet (hereinafter "MAD diet"). Plaintiff essentially argues he is

entitled to a MAD diet due to his medical condition, religious beliefs and personal choice (Doc. #77). In his First Amended Complaint, Plaintiff asserts he initially requested a MAD diet after a near fatal stabbing in June, 1997 in order to relieve his high cholesterol, high blood pressure, heart strains, blurred vision, dizziness and "overweightness." (*Id.* at 148). He also asserts he requested a MAD diet to counter the side effects of constipation, cramps and dry mouth due to his daily pain medication (*Id.*). Plaintiff claims the MAD diet gave him relief in the form of "excess weight loss", an improved heart condition and reduced blood pressure and cholesterol (*Id.* at 149).[1]

Plaintiff's Eighth Amendment claim is not based on a denial of a MAD diet; rather, Plaintiff alleges Defendants violated his Eighth Amendment right by essentially altering the MAD diet on or about 2003-2004 to the "newly! altered, degraded, devised 'meatless alternative diet.'" (*Id.*). According to Plaintiff, prior to this alteration the MAD diet was "much healthier." (*Id.*). Plaintiff alleges the current MAD diet is not nutritionally adequate and has caused Plaintiff to suffer additional weight loss and medical complications (Doc. #77 at 11). In essence, Plaintiff alleges the following: illegal meats are served on MAD diet trays; the portion sizes are inadequate; Plaintiff is denied gravy, breads, crackers, condiments and reduced portions of peanut butter; Plaintiff is served 3-day left-over food; the main entree is "brown goop"; and there are "excess" daily servings of eggs, refined white breads, starches and

---

[1] Plaintiff also asserts he requested a MAD diet for health reasons in conjunction with informing officials of his "religious experience/awakening to 'not eat meat!' to enhance Plaintiff(s) et. al.'s spiritual/religious insights ..." (Doc. #2 at 149). Plaintiff asserts he is an "Ancient Baptist" with "7th Day Advent religious traditions of no meats." (*Id.*). In his opposition, Plaintiff asserts he is 7th Day Baptist, which requires a "nutritional/meatless diet, not a strict vegetarian diet." (Doc. #77 at 10). There is no evidence before this court suggesting that Plaintiff's professed vegetarianism is rooted in his religious beliefs. Furthermore, the Seventh Judicial District Court found Plaintiff never provided any evidence of a religious basis for his participation in an alternative diet (Docs. #80 at 4, 32 at 5). Accordingly, this Report and Recommendation focuses on the allegation that Plaintiff eats an alternative diet for health reasons.

1  carbohydrates which Plaintiff claims are unhealthy and cancerous (*Id.* at 11-12). Thus,
2  Plaintiff's claim is based on Plaintiff's own judgment as to the nutritional value of the MAD
3  diet served at ESP.

4  Plaintiff has not been medically ordered to eat a MAD diet; rather, Plaintiff simply
5  requested a MAD diet in order to alleviate his alleged physical ailments and that request was
6  approved. To date, no doctor has opined that Plaintiff suffers from any serious medical need,
7  nor has any doctor opined that Plaintiff needs to eat a MAD diet in order to meet any medical
8  need.

9  Defendants assert Mary Agnes Boni, MPH, RD, a registered dietician, found the
10 alternative diet menu (MAD diet) has the same nutritional value as the regular Male Menu
11 (Doc. #80 at 5, Doc. #77, Exhs. D-5, D-7). The evidence shows Ms. Boni certified on April 3,
12 2007 that the Male Menu for NDOC had been reviewed and analyzed for nutritional adequacy
13 and the menu "meets or exceeds all minimum requirements for adult males as specified by
14 the Dietary Reference Intakes (DRIs) as established by the Food and Nutrition Board Institute
15 of Medicine, National Academies." (Doc. #72, Exh. B, p.3). Ms. Boni explained that the
16 sodium and cholesterol levels are on the high side; however, she further explained that these
17 levels were not excessive and are currently in accordance with the average American diet (*Id.*).
18 Ms. Boni again certified the Male Menu meets or exceeds all minimum requirements for adult
19 males on November 12, 2007 (*Id.*, p. 4). Thus, Plaintiff's claim is simply based on a difference
20 in judgment between Plaintiff and Ms. Boni, a registered dietician. A difference of opinion
21 or judgment does not constitute cruel and unusual punishment. Furthermore, Plaintiff has
22 failed to show any Defendants possessed a sufficiently culpable state of mind where they relied
23 on Ms. Boni's certifications.

24 Although Plaintiff claims the MAD diet is causing him medical complications, such as
25 gastrointestinal problems and weight loss, Plaintiff has failed to produce any evidence that
26 he sought medical treatment for these alleged problems and the medical staff recommended
27 Plaintiff eat an alternative diet. In fact, Plaintiff has produced no evidence that he suffered
28

any medical problems due to the nutritional value of the MAD diet. The record indicates there is no medical order in Plaintiff's medical records requiring vegetarian meals for health purposes (Doc. #72, Exh. A, p. 4). And there is no evidence in the record that any of Plaintiff's alleged problems are due to his diet or the inadequacy of the MAD diet. Accordingly, Plaintiff has failed to show Defendants acted with deliberate indifference to his serious medical needs or to his health and safety by serving Plaintiff an allegedly nutritionally inadequate MAD diet and summary judgment on this claim should be **GRANTED**.

### 2. Extra Blankets

The Eighth Amendment guarantees prisoners adequate heating. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). Furthermore, the Supreme Court has recognized a low cell temperature at night combined with a failure to issue blankets may establish an Eighth Amendment violation. *Wilson*, 501 U.S. at 304. However, in order to establish an Eighth Amendment violation, Plaintiff must show Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, Plaintiff must show Defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it either by their actions or inactions. *Id.* at 837.

Plaintiff asserts Defendants violated his Eighth Amendment rights by denying him extra blankets during extremely cold cell temperatures, despite being issued an "indefinite" extra blanket medical order on March 26, 2001 by Dr. Gedney in response to Plaintiff's pneumonia (Doc. #77 at 4-5). Plaintiff further asserts that extra layers of clothing have provided no relief and Defendants' maintenance checks of Plaintiff's cell were flawed because they were not taken at night (*Id.*).

Defendants argue Administrative Regulation 711 only allows inmates to possess two (2) blankets and Plaintiff's cell was checked multiple times and was found to be the required temperature of between 72-74 degrees (Doc. #72 at 5-7). Defendants further argue Plaintiff attempted to commit suicide on August 28, 2001, which raises concerns over his request for extra blankets and Plaintiff can wear additional layers of clothing instead of receiving extra

9

blankets (Doc. #80 at 7). Finally, Defendants argue that Plaintiff's "indefinite" extra blanket order was issued prior to his suicide attempt (*Id.*).

Under these facts, even if Plaintiff's cell is cold, Plaintiff has failed to show Defendants acted with a sufficiently culpable state of mind to constitute deliberate indifference, as set forth below.

First, Plaintiff does not allege Defendants failed to issue any blankets; rather, he alleges Defendants refused to issue "extra" blankets. Plaintiff asserts Defendants issued him only one (1) blanket, since 2003, rather than two (2) blankets as provided for in AR 711; however, AR 711 limits blankets to a maximum of (2), it does not mandate each inmate receive two (2) blankets (Doc. #72, Exh. C, p. 24). In addition, the evidence shows Plaintiff repeatedly requested "extra" blankets, not a second blanket as provided for under AR 711. Defendants submit that Plaintiff was issued two (2) blankets pursuant to AR 711 (Doc. #72 at 6). In any event, this disputed fact over whether Defendants issued Plaintiff one (1) or (2) blankets does not raise genuine issues of material fact where Defendants have legitimate safety concerns over issuing Plaintiff any additional blankets.

Second, Plaintiff does not dispute previously attempting suicide by tying two (2) sheets together and Plaintiff acknowledges Defendants justification for refusing to issue Plaintiff extra blankets is due to his suicide attempt (Doc. #77 at 9). Thus, Defendants have legitimate penological concerns over issuing Plaintiff extra blankets where they are charged with his safety and he has shown he is a potential danger to himself. "Courts must accord wide-ranging deference to prison administrators 'in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Toussaint v. McCarthy*, 801 F.2d 1080, 1104 (9th Cir. 1986) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). "[W]here state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities." *Id.* (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). As the Ninth Circuit recognized, the judgment of prison officials turns largely on purely subjective evaluations and predictions

of future behavior, as administrators must predict an inmate's future actions. *Id.* at 1103. Here, based on Plaintiff's previous suicide attempt, prison officials predict issuing Plaintiff extra blankets poses a substantial risk of harm to Plaintiff's own safety, as he may attempt to end his life again.

Third, Plaintiff's indefinite blanket order issued in March, 2001, prior to his suicide attempt on August 28, 2001 (Doc. #77, Exh. A-2; Doc. #80 at 7), does not lend support to Plaintiff's argument that he is still under an indefinite medical blanket order. The record indicates that, more recently, Dr. Ted D'Amico, Medical Director, found there was no evidence to justify an extra blanket on April 17, 2003 and Dr. Williamson issued an extra blanket order for only sixty (60) days on March 17, 2003 (Doc. #80 at 7). If Plaintiff was still under an indefinite blanket order, there would be no need for Dr. Williamson to issue a 60-day extrablanket order. Furthermore, Plaintiff was not issued another indefinite blanket order after the March 17, 2003 60-day order and Plaintiff has provided no evidence that the medical staff have since issued another "extra" blanket order due to Plaintiff's alleged health conditions.

Fourth, Plaintiff's conclusory allegation that he suffered severe health deterioration due to the cold temperature in his cell is without merit. Plaintiff has provided no evidence, let alone medical evidence, to prove that he suffered any particular injury due to the allegedly cold temperature. While the absence of injury is not conclusive, it is relevant to determining whether Plaintiff suffered a sufficiently serious deprivation. Here, Plaintiff has failed to show a sufficiently serious deprivation of adequate heating.

Fifth, Plaintiff does not dispute Defendants assertion that he is entitled to several items of clothing he can wear in addition to his two (2) blankets if the temperature in his cell is low. Plaintiff asserts "extra" layers of clothing provide no relief; however, there is no evidence in the record of what "extra" layers of clothing Plaintiff attempted to wear, there is no evidence that Plaintiff complained to prison officials that he attempted to wear additional items of clothing together with his two (2) blankets and they have provided no relief, and there is no

11

evidence that Plaintiff requested additional items of clothing, rather than additional blankets, to provide relief.  Thus, Plaintiff has again failed to show Defendants acted with a sufficiently culpable state of mind where Plaintiff has not shown he attempted to wear the additional clothing Defendants assert he is entitled to wear.

Sixth, Plaintiff has provided no evidence to support his allegation that the cell he is assigned to is architecturally flawed (Doc. #77 at 8).  Plaintiff's mere assertion that sixteen (16) cells are flawed and Defendants can "fix" these flaws by spending only a "few hundred dollars labor to correct all 16 (sixteen) cells" is without merit.  Plaintiff is in no position to determine the structural quality of his cell or any other cell, nor is he in a position to inform Defendants of the cost of these alleged needed repairs or the manner in which to allocate prison funds.

Seventh, the evidence shows Defendants performed maintenance checks of Plaintiff's cell to ensure the temperature stayed between 72-74 degrees.  Although Plaintiff disputes the accuracy of Defendants' testing, Plaintiff has failed to show any Defendants had the requisite state of mind to constitute deliberate indifference.  In other words, Plaintiff has not set forth sufficient facts to show Defendants knew Plaintiff faced a substantial risk of serious harm to his health and safety and failed to take reasonable measures to abate that risk either by their actions or inactions.  To the contrary, the record indicates Defendants took action to ensure Plaintiff's cell maintained adequate heating.

Under these facts, Plaintiff has failed to show Defendants acted with deliberate indifference to his serious medical needs, health or safety and summary judgment on this claim should be **GRANTED**.

C.  **FOURTEENTH AMENDMENT**

"States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995); *see also Board of Pardons v. Allen*, 482 U.S. 369 (1987). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner

12

1   as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes
2   atypical and significant hardship on the inmate in relation to the ordinary incidents of prison
3   life." *Id.* at 484 (internal citations omitted).

4   Plaintiff alleges he requested a due process hearing to validate that his MAD diet was
5   based on "severe" medical constipation, heart ailments, high cholesterol, etc. (Doc. #77 at 13).
6   Apparently, Plaintiff requested a due process hearing in order to establish that he has a
7   protected liberty interest in a MAD diet (*Id.*).

8   Defendants assert Plaintiff has no liberty interest in the MAD diet; therefore, they did
9   not violate Plaintiff's Fourteenth Amendment rights (Doc. #72 at 7). Specifically, Defendants
10  assert that Plaintiff has no medical order for a MAD diet; therefore, he has no protected liberty
11  interest at stake (*Id.* at 7-8).

12  As previously discussed, Plaintiff's complaint is not based on the denial of a MAD diet;
13  rather, it is based on Plaintiff's disagreement over the nutritional quality of the MAD diet since
14  the apparent change on or about 2003-2004. Because Plaintiff actually receives a MAD diet,
15  any possible due process claim would be based on the changes to the diet of which Plaintiff
16  now complains. The Fourteenth Amendment does not "protect every change in the conditions
17  of confinement having a substantial impact on the prisoner." *Sandin*, 515 U.S. at 478. Process
18  is due only before changes that inflict an "atypical and significant hardship on the inmate in
19  relation to the ordinary incidents of prison life." *Id.* At 484.

20  Plaintiff has failed to show the MAD diet he is now served presents an atypical and
21  significant hardship in relation to the ordinary incidents of prison life. Plaintiff's allegations
22  have nothing to do with freedom from restraint and Plaintiff has presented no evidence
23  demonstrating he has been denied adequate food to maintain his health. Thus, Plaintiff has
24  failed to show he has a protected liberty interest in the MAD diet, as it was served prior to the
25  supposed change in 2003-2004 or as it is served now, that entitles him to procedural
26  protections afforded by the Fourteenth Amendment. Accordingly, summary judgment on this
27  claim should be **GRANTED**.

28

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #72).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), FED. R. CIV. P., should not be filed until entry of the District Court's judgment.

DATED: June 4, 2008.

_____
UNITED STATES MAGISTRATE JUDGE